**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No. 2:12-cr-0201-DBH |
| | ) | |
| BENJAMIN LEE | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM AND INCORPORATED MOTIONS FOR DOWNWARD DEPARTURE AND DOWNWARD VARIANCE**

On September 16, 2013, the jury convicted Defendant Benjamin Lee on two counts of Interstate Stalking in violation of 18 U.S.C. § 2261A. On December 5, 2013, the Court approved the Government's motion for forfeiture under 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c). Probation has determined Mr. Lee's Guidelines sentencing range to be 51 to 63 months based on an offense level of 24 and a criminal history category of I. See Presentence Investigation Report ("PSI") at ¶ 60. The statutory maximum sentence is 60 months on each count. 18 U.S.C. § 2261(b)(5). For reasons set forth herein, and pursuant to 18 U.S.C. §§ 3553(a), Mr. Lee respectfully requests that the Court impose a sentence of **31 months**, based on the following:

(1) Probation erred by applying a four-level enhancement to the base offense level under U.S.S.G. § 2A6.2(b)(1); it should have applied a two-level enhancement, which would have resulted in an offense level of 22/criminal history category I, and a recommended Guidelines sentencing range of 41-51 months;

(2) Mr. Lee qualifies for a downward departure under U.S.S.G. §5H1.3 (Mental and Emotional Condition) and U.S.S.G. §5H1.4 (Physical Condition)[1];

(3) Mr. Lee qualifies for a downward variance under one or more factors set forth in 18 U.S.C. §3553(a)

Mr. Lee's motion seeks imposition of a sentence that is sufficient but not greater than necessary to comply with the purposes of sentencing. A sentence of 31 months would reflect a 25% reduction to the adjusted Guidelines sentence of 41 months.

[1] Mr. Lee withdraws his request for a departure based on §5K2.13 (Diminished Capacity).

## RELEVANT FACTS

Benjamin Lee (53) has been incarcerated since his arrest on September 7, 2012. Prior to his arrest, he spent the better part of six months in and out of intensive care units and psychiatric wards in Springfield, Missouri for treatment of serious medical and mental health conditions.

Mr. Lee submits four letters for the Court's consideration, attached hereto as Exhibits 1A-1D. The letters were written by his mother Florence Walker, brother Allen Lee, sister Verna Huntley, and sister Stella Lee, who served as a government witness. All urge the Court to recommend that Mr. Lee be transferred to the medical center in Springfield, Missouri.[2]

**Mr. Lee's Personal History**: With limited exceptions noted below, Mr. Lee acknowledges the accuracy of factual statements in Probation's narrative describing his Personal and Family Data (PSI ¶¶ 46-48), Physical Condition (PSI ¶¶ 49-50), Mental and Emotional Health (PSI ¶¶ 51-53), Substance Abuse (PSI ¶ 54), and Education and Vocational Skills, Employment, and Financial Condition (PSI ¶¶ 55-58).

Physical and Mental Health Issues: Probation has incorporated into the PSI a summary of Mr. Lee's medical and mental health history (see Defendant's Trial Exhibit 3), which as the Court may recall was a stipulated defense exhibit offered used in connection with a medical expert. Counsel will assume the Court is familiar with Mr. Lee's medical and mental health history. Counsel will refer to and use the information in the medical and mental health records summary to support Mr. Lee's arguments that he qualifies for departures under U.S.S.G. §5H1.3 (mental and emotional condition) and §5H1.4 (physical condition).

[2] Mr. Lee is aware that the Court cannot (and will not) guarantee placement at any Bureau of Prison facility and that all such decisions regarding inmate transfers are made by BOP, including decisions with respect to placement at a medical facility. Notwithstanding the limitations placed upon the Court, Mr. Lee respectfully requests that the Court make a specific recommendation to Springfield MCFP, which appears to be a very specialized administrative medical center that happens to be in Mr. Lee's hometown.

Though not reflected in the PSI, Mr. Lee would like the Court to know that although he has struggled with major physical and mental illnesses, particularly in the spring and summer of 2012, he believes that his overall health condition has greatly improved since his arrest due to a steady medication regimen and clinical oversight by the Strafford County Jail medical staff.

Substance Abuse: Mr. Lee understands that prior criminal history reports and certain statements attributed to family members suggest that he has a rather extensive history with alcohol and illegal drugs. See PSI ¶ 54 (Substance Abuse). He has asked counsel to provide the following statement to clarify his history with substance abuse:

> Mr. Lee acknowledges and regrets that he was dependent upon prescription medication for many years. Like many medical patients who have become addicted to narcotics, his addiction began with and progressed through legal prescriptions for pain medication to treat legitimate medical conditions. He further acknowledges and regrets that he became increasingly dependent upon his ex-wife Tawny Lee to manage his prescription medication regimen, and after she left him and traveled to Maine in April of 2012, he was incapable of managing his medical conditions and/or prescription medication regimen, including management of his diabetes (insulin). He believes that a number of factors led to his rapid physical and emotional decline in the spring and summer of 2012, including increased anxiety and depression following his wife's departure, inconsistencies with or neglect of managing his insulin levels, inconsistencies with or overuse of prescription medication, and a lack of personal and medical care. Contrary to certain police reports[3] and statements of family members or health care providers, Mr. Lee adamantly denies any involvement in manufacturing, trafficking, distribution, or sale of illegal drugs.

Probation correctly notes that Mr. Lee continues to participate in substance abuse counseling while at Strafford County Jail. PSI ¶ 54.

**The Offense**: With limited exceptions noted below, and while maintaining his plea of not guilty, Mr. Lee acknowledges the accuracy of most factual statements set forth in Probation's narrative describing the Offense Conduct (PSI ¶¶ 5-11). For example, he does not dispute that

[3] In Paragraph 54 of the PSI (Substance Abuse), Probation refers to two police reports (¶¶ 39, 45) which describe Mr. Lee's alleged involvement in a 1994 attempted distribution of an imitation controlled substance (to which he pled no contest) and a 2011 unspecified charge of manufacturing a controlled substance (methamphetamine). Neither of these offenses gives rise to criminal history enhancement.

he traveled to Maine from Missouri in early September 2012 or that he drove by the Limerick, Maine home of Tawny Lee and Timothy Mann on September 7, 2012. He admits that he consented to a search of his vehicle and that police seized a number of firearms, ammunition, and other items that the government considered dangerous weapons or tools intended to further criminal activity. He does not dispute that he authored a number of email messages to Tawny Lee between April and June of 2012 (though he does not remember writing many of them).

However, Mr. Lee denies that he intended to use the firearms, ammunition, or tools and equipment for any unlawful purpose. He denies allegations that he became a "heavy drug user". PSI ¶ 7. He denies making threatening statements to Mr. Prentice or Stella Lee. PSI ¶ 9. He denies that a note written to his son Avery, found by Tawny Lee in September or October of 2012, was a "suicide note", though he acknowledges how one could draw this conclusion. PSI ¶ 10. Finally, he denies that he intended to kill, injure, or harass Ms. Lee or Mr. Mann, or place them under surveillance with the intention to kill, injure or harass either of them.

Contrary to Probation's characterizations in ¶ 7 of the PSI, Mr. Lee denies that he subjected Tawny Lee to years of physical abuse or that he "repeated threats to kill Ms. Lee over the years". PSI ¶ 7. Mr. Lee directs the Court to undisputed trial evidence confirming that Ms. Lee was not afraid of Mr. Lee until some time in April 2012, after she had left Missouri and moved in with Mr. Mann. *See* Government Trial Exhibit E (E002-0008 4/22/12 email; E002-0027 4/26/12 email); see also cross-examination of Ms. Lee acknowledging same.

**ARGUMENT**

The Court should re-calculate the advisory Guidelines sentencing range to a range of 41-51 months. The Court should grant Mr. Lee's motion for a departure below the Guidelines

sentencing range based on the provisions set forth in U.S.S.G. § 5H1.3 (Mental and Emotional Condition) and §5H1.4 (Physical Condition). The Court should also grant the motion for a downward variance from the Guidelines range based on factors set forth in 18 U.S.C. § 3553(a).

**A. Applicable Legal Standards**

Sentencing Process Generally: The Supreme Court in *Gall v. U.S.*, 128 S. Ct. 586 (2007) and the First Circuit in *U.S. v. Martin* 520 F.3d 87 (1st Cir. 2008) have established and reiterated the sentencing process a court must follow. The sentencing determination begins with the calculation of the advisory sentencing range. The court then hears from the parties on a proper sentence considering the case and defendant specific facts, weighing the applicability of the factors delineated in 18 U.S.C. § 3553(a). The final sentence rests with the explained determination of the court. *U.S. v. Jimenez-Beltre*, 440 F.3d 514, 518-19 (1st Cir. 2006). A sentencing judge may reject the Guideline range on the basis of a policy disagreement with the Guidelines. *U.S. v. Spears*, 129 S. Ct. 840, 844 (2009); *U.S. v. Boardman*, 528 F.3d 86, 87 (1st Cir. 2008). On review, *Gall* directs the circuit to look to the procedural soundness and substantive reasonableness of a sentence. *U.S. v. Thurston*, 544 F.3d 22, 24-25 (1st Cir. 2008) citing *Gall* at 597. Substantive reasonableness is reviewed for "abuse of discretion". *Gall* at 591.

Departures and Variances: The United States Sentencing Commission has identified a number of facts and circumstances upon which a Court should consider a "departure" or "variance" from the advisory Guidelines sentence.[4] Generally speaking, Courts may "depart" upon a motion identifying specific Guidelines provisions, such as "specific offender

[4] See *U.S v. Brown*, 578 F.3d 221 (3rd Cir. 2009), in which the Court distinguishes between departures from and variances from the Guidelines, noting "departures are enhancements of, or subtractions from, a Guidelines calculation based on a specific Guidelines departure provision upon motion by the requesting party and an express ruling by the court…variances, in contrast, are discretionary changes to a Guidelines sentencing range based on a judge's review of all the § 3553(a) factors." Id. at 225-226.

characteristics" set forth in §5H and/or specific circumstances set forth in §5K2, while a variance (up or down) would be based on §3553(a) factors. *U.S v. Brown*, 578 F.3d 221 (3rd Cir. 2009).

Departure Based on Guidelines Provisions: Mr. Lee has identified two specific Guidelines provisions supporting his argument for a departure. They include §5H1.3 (Mental and Emotional Condition) and §5H1.4 (Physical Condition).

> ***Section 5H1.3*** states: "mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines."
>
> ***Section 5H1.4*** states in pertinent part: "Physical condition or appearance, including physique, may be relevant in determining whether a departure is warranted, if the condition or appearance, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines. An extraordinary physical impairment may be a reason to depart downward; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment."

Variance Based on Sentencing Factors: A sentencing court may vary from the Guidelines based on the factors set forth in § 3553(a) and/or upon any rationale basis supported by the facts of a case. Following *Gall*, the First Circuit has noted that sentencing "necessitates a case-by-case approach, the hallmark of which is flexibility." *U.S. v. Prosperi*, 686 F.3d 32, 42 (1st. Cir. 2012). The *Prosperi* Court clarified the discretion afforded a sentencing court:

> [A] sentencing court should not consider itself constrained by the guidelines to the extent that there are sound, case-specific reasons for deviating from them. However, if a court chooses to impose a sentence outside of the guidelines range, "[t]he court's reasons for deviation should typically be rooted either in the nature and circumstances of the offense or the characteristics of the offender; must add up to a plausible rationale; and must justify a variance of the magnitude in question."

686 F. 3d at 42 (internal citations omitted). See also *U.S. v. Brown* 578 F.3d 221 (3rd Cir. 2009) (distinguishing between departures and variances).

Section 3553(a) lists seven factors to be considered in imposing a sentence and provides that a sentencing court shall impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection". The court, in determining the particular sentence to be imposed, shall consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to (A) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (B) afford adequate deterrence to criminal conduct; (C) protect the public from further crimes of the defendant; and (D) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established [by the sentencing guidelines]; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(1)-(7).

**B. The Court Should Re-Calculate the Recommended Guidelines Sentencing Range to Reflect a Two-Level Enhancement Under U.S.S.G. § 2A6.2(b)(1)**

Paragraph 19 of the PSI suggests a four-level enhancement pursuant to USSG § 2A6.2(b)(1).[5] The PSI concluded that the defendant "possessed a dangerous weapon and engaged in a pattern of activity which involved stalking, threatening, harassing or assaulting the victim, Tawny Lee". There has been no allegation that Mr. Lee violated a court order or that his

[5] USSG § 2A6.2(b)(1) provides an enhancement if the offense involved one or more of the following aggravating factors: (A) the violation of a court protection order; (B) bodily injury; (C) possession, or threatened use, of a dangerous weapon; or (D) a pattern of activity involving stalking, threatening, harassing, or assaulting the same victim, increase by 2 levels. If the offense involved more than one of these aggravating factors, increase by 4 levels.

actions caused bodily injury. There is no dispute that Mr. Lee was in possession of "dangerous weapons", thereby justifying a two-level enhancement under § 2A6.2(b)(1)(C). However, there was no evidence that Mr. Lee engaged in a "pattern of activity" (i.e., 2 or more instances separate from the offense conduct) which involved "stalking, threatening, harassing, or assaulting" Ms. Lee. The evidence used to support Mr. Lee's culpable mental state on the stalking counts is the same evidence used to establish a "pattern of activity" supporting the enhancement in ¶19.[6] Compare *U.S. v. Robinson*, 433 F.3d 31 (1st Cir. 2005) (upholding enhancement under § 2A6.2(b)(1) for "pattern of activity" of stalking, threatening, or harassing involving same victim based on prior assault and threatening letters).

Mr. Lee objects to the four-level enhancement pursuant to § 2A6.2. He acknowledges that there are grounds for a two-level enhancement based on the fact he was in possession of "dangerous weapons". The result would be an Adjusted Offense Level of 22 -- not 24. His Guidelines range sentence should be 41-51 months rather than 51-63 months.

**C. The Court Should Grant Mr. Lee's Motion for a Departure Below the Advisory Guidelines Range Based on an Application of §§ 5H1.3 and 5H1.4**

1. Mr. Lee Qualifies for a Departure Under §5H1.3: Based on the undisputed medical evidence offered at trial, the Court should recognize that Mr. Lee suffers from legitimate mental and emotional conditions and that a departure is warranted because his mental and emotional conditions are "present to an unusual degree and distinguish the case from the typical cases covered by the guidelines". U.S.S.G. §5H1.3.

[6] Application Note 1 to USSG § 2A6.2 states: "Pattern of activity involving stalking, threatening, harassing, or assaulting the same victim" means any combination of two or more **separate** instances of stalking, threatening, harassing, or assaulting the same victim, whether or not such conduct resulted in a conviction. For example, a single instance of stalking accompanied by a separate instance of threatening, harassing, or assaulting the same victim constitutes a pattern of activity for purposes of this guideline." (emphasis supplied).

While it is true that a Bureau of Prisons psychologist found Mr. Lee competent to understand the nature of the charges and assist in his defense (see Document 23), it is equally true that Mr. Lee underwent serious mental health treatment in the six months preceding his arrest. As the medical and mental health records make clear and as Dr. Irish testified at trial (neither of which were challenged by the government), Mr. Lee was hospitalized and treated for "altered mental status" on several occasions in 2012, including April 19-21, April 27-May 6, May 20-30, and May 31-June 6 (inpatient). See Defense Trial Exhibit 3 (Summary of Medical and Mental Health Records). There was an abundance of evidence to support the fact that Mr. Lee experienced mental illness to "an unusual degree" during periods of time in which he (allegedly) sent threatening email messages to Ms. Lee, verbally threatened Ms. Lee and members of her family, and admitted his criminal intentions to friends and family. And while the evidence supports the fact that Mr. Lee calmed down in July and August of 2012, there is no evidence that he was "cured" of any mental or emotional conditions. To the contrary, the evidence at trial demonstrates that he spent the majority of his time in July and August with family members because he was unable to care for himself.

A departure on grounds of impaired mental and emotional conditions is warranted.

2. Mr. Lee Qualifies for a Departure Under §5H1.4: The jury was presented with undisputed evidence that Mr. Lee suffered from a number of serious physical conditions, including hypoglycemia due to uncontrolled diabetes, a fractured lumbar spine suffered in a serious car accident in March 2012, and heart disease highlighted by aortic valve replacement in 2011. The medical records state on numerous occasions that Mr. Lee suffered from chronic pain due to a long history of serious medical problems.

Like his mental and emotional conditions, Mr. Lee's physical limitations and extraordinary physical impairment are present "to an unusual degree" and warrant a departure. This is true when considering both how his physical condition and overall health will be affected by the sentence or how his physical condition related to his mental state and culpability.

Mr. Lee drove more than halfway across the country in a span of three days. At the time he weighed over 350 pounds and had extremely limited mobility. While the jury certainly heard evidence that Ms. Lee and Mr. Mann were in fear of Mr. Lee on September 7, 2012, the jury also heard that Mr. Lee had a very limited physical capacity to act on the alleged threats. For example, based on the undisputed fact that Mr. Lee and Ms. Lee had been regularly communicating until mid-August 2012, Ms. Lee knew that Mr. Lee was hospitalized several times following surgeries, was in a great deal of pain, and could barely walk. Moreover, the police transcripts introduced by the government at trial demonstrate that Mr. Lee told Troopers that there was no way he could have caused anyone harm because of his physical limitations. *See*, e.g., Government Trial Exhibit D-2 (Transcript of Dash-Cam videos) ("I've been sitting in the house for five or six months. I broke my back March first and I've had two major back surgeries since then. The last one was the end of July. I'm just now getting to where I can walk and I've been in the house all this time").

A departure on grounds of impaired physical condition is warranted.

**D. The Court Should Grant Mr. Lee's Motion for a Variance Below the Advisory Guidelines Range Based on the Factors Set Forth in 18 U.S.C. § 3553(a)**

In determining whether or not to vary from the applicable sentencing Guidelines range, the Court must consider all of the 3553(a) factors. For the reasons stated below, the Court should vary downward from the recommended Guidelines sentence.

1. The nature and circumstances of the offense and the history and characteristics of the defendant: With all due respect to the federal criminal justice system, Mr. Lee would be facing probation or a relatively minor jail sentence had he been charged by the York County District Attorney and convicted of a similar crime.[7] There is a strong argument that Interstate Stalking, a "federalized" state domestic violence law, imposes grossly unfair consequences to a defendant who makes the mistake of crossing a state line. Without suggesting that domestic violence is not a problem in this country or that such matters are unworthy of prosecution, the nature and circumstances of this offense are no more serious than the nature and circumstances of many similar domestic violence offenses brought by Assistant District Attorneys throughout the State of Maine. There is no doubt that Mr. Lee faces a possible prison term of **10 years** not because of the particulars of the offense of stalking, but because he traveled interstate.

With respect to Mr. Lee's "history and characteristics", much of what was stated about Mr. Lee's medical and mental health conditions in support of a downward departure applies equally to a motion for downward variance under § 3553(a)(1). However, the following points are worthy of emphasis: (1) Mr. Lee has no relevant criminal history, (2) other than a misdemeanor assault conviction at the age of 18, Mr. Lee has no history of violence, (3) Tawny Lee admitted that she was not afraid of Mr. Lee until she left Missouri in April of 2012, when Mr. Lee's mental and emotional instability became evident, and (4) as noted in the statement on page 3, his substance abuse history has been grossly overstated or misinterpreted.

2. The need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, adequately deter criminal conduct, and to protect the public: Mr. Lee

[7] Mr. Lee was originally held on "attempted kidnapping" charges. However, he was never formally charged as such and was held for nearly four months without an attorney while the U.S. Attorney's Office contemplated the indictment for Interstate Stalking. The Maine criminal statute most similar to 18 U.S.C. § 2261A is found at 17-A M.R.S. § 201-C (Domestic Violence Stalking), a Class D **misdemeanor**.

has been in prison since his arrest on September 7, 2012 and will most likely serve many additional months in a federal prison, if not years. Even if the Court imposed "time served", the sentence would reflect the seriousness of the offense, promote respect for the law, and provide just punishment. Assuming Mr. Lee receives proper medical and mental health treatment, he poses no threat to the public.

3. The need for the sentence to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner: As stated at the outset of the memorandum, Mr. Lee respectfully requests an express recommendation to the Bureau of Prisons for placement at Springfield MCFP, where Mr. Lee can receive the medical, mental health, and substance abuse treatment he clearly needs from qualified BOP health care providers in a facility that is less than 60 miles from nearly all of the members of his family. See Exhibit 1A-1D (letters from family).

4. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct: But for the fact that Mr. Lee was indicted by a federal grand jury and convicted by a federal jury for violating a federal domestic violence statute, a defendant with a criminal history similar to Mr. Lee convicted of similar conduct under a state domestic violence statute would have been subject to no more than one year in a state correctional facility. See 17-A M.R.S. § 1252(2)(D) (Maximum term of imprisonment for Class D crimes not to exceed one year).

## PRAYERS FOR RELIEF

For the foregoing reasons, Benjamin Lee respectfully moves the Court as follows:

(1) To re-calculate his Guidelines sentence range from Offense Level 24/Criminal History Category I to Offense Level 22/Criminal History Category I to reflect a two-level enhancement under U.S.S.G. § 2A6.2(b);

(2) To depart from the advisory Guidelines sentencing range by 25% or more based on U.S.S.G. § 5H1.3 (Mental and Emotional Conditions) and §5H1.4 (Physical Condition); and

(3) To vary from the Guidelines sentencing range by 25% or more based on one or more of the factors set forth in 18 U.S.C. § 3553(a); and

DATED: December 30, 2013

*/s/ James A. Clifford*
James A. Clifford, Esq.
Attorney for Defendant Benjamin Lee

Clifford & Clifford, LLC
62 Portland Rd., Suite 37
Kennebunk, ME 04043
(207) 985-3200
Email: james@cliffordclifford.com

**UNITED STATES DISTRICT COURT**
**CERTIFICATE OF SERVICE**

I hereby certify that on December 30, 2013, I electronically filed *Defendant's Sentencing Memorandum* with the Clerk of Court using the CM/ECF system and notification of such filing was sent to the following:

Darcie McElwee
Assistant United States Attorney
100 Middle St.
Portland, ME 04101

*/s/ James A. Clifford*
James A. Clifford