BENJAMIN LEE,                           )
                                        )
            Petitioner,                 )
                                        )
      v.                                )           2:12-cr-00201-DBH
                                        )           2:16-cv-00252-DBH
                                        )
UNITED STATES OF AMERICA,               )
                                        )
            Respondent                  )


## RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION

In this action, Petitioner Benjamin Lee moves, pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct his sentence. (Motion, ECF No. 158.) Following a jury trial, Petitioner was convicted of two counts of interstate stalking; the Court sentenced Petitioner to a total of 100 months in prison. (Judgment, ECF No. 126 at 1-2.) The First Circuit affirmed the conviction and sentence on appeal. *United States v. Lee*, 790 F.3d 12 (1st Cir. 2015).

In support of his section 2255 motion, Petitioner contends that counsel's performance was ineffective because counsel (1) failed to move for a continuance of the trial, abandoned Petitioner at a critical stage of the proceedings, and failed to present a complete defense; (2) failed to ensure that Petitioner had the opportunity to exercise his right to testify in his own defense; (3) failed to move to suppress evidence for violations of the Fourth and Fifth Amendments; (4) failed to argue for the exclusion of evidence of prior

bad acts; and (5) failed to advise Petitioner regarding sentencing exposure.  In addition, Petitioner alleges cumulative error.

The Government has moved to dismiss the section 2255 motion.  (Response, ECF No.172.)  Following a review of Petitioner's motion and the Government's request for dismissal, I recommend the Court grant the Government's request, and dismiss Petitioner's motion.

## I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The facts of the case are set forth in detail in the First Circuit's opinion on Petitioner's appeal.  *Lee*, 790 F.3d at 13-15.  They are repeated in this recommended decision only as necessary to the discussion of each of the issues raised in Petitioner's section 2255 motion.

Following a jury trial, Petitioner "was convicted of two counts of interstate stalking with the intent to harm, or even kill, his estranged wife and her boyfriend, in violation of 18 U.S.C. §§ 2261A(1) and 2261(b)(5)," for an offense that Petitioner committed in September 2012.[1]  *Lee*, 790 F.3d at 13.  (Judgment at 1.)  The Court sentenced him to

---

[1] Title 18 U.S.C. § 2261A(1) states:

Whoever –

(**1**) travels in interstate or foreign commerce or is present within the special maritime and territorial jurisdiction of the United States, or enters or leaves Indian country, with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, and in the course of, or as a result of, such travel or presence engages in conduct that--
(**A**) places that person in reasonable fear of the death of, or serious bodily injury to—

(**i**)      that person;

prison terms of 60 months on count one and 40 months on count two, to be served consecutively, followed by a term of three years of supervised release on each of the counts, to be served concurrently. (Judgment at 2-3.) Petitioner appealed from the conviction and sentence.

On Petitioner's challenge to the conviction, the First Circuit held (1) that the Court did not abuse its discretion in denying Petitioner's motion in limine to exclude evidence of prior abuse of his estranged wife; (2) that the Court did not abuse its discretion with respect to the timing of the trial; and (3) that the evidence was sufficient to support the conviction. *Lee*, 790 F.3d at 16-18.

On Petitioner's challenge to the sentence, the First Circuit held (1) that the Court did not misapply a sentencing enhancement for a pattern of activity when calculating the sentencing guidelines range; (2) that the Court did not abuse its discretion when it denied a downward departure for Petitioner's mental and physical condition; and (3) that the Court did not abuse its discretion with respect to the substantive reasonableness of the sentence. *Id.* at 18-19.

---

**(ii)**     an immediate family member (as defined in section 115) of that person; or

**(iii)**     a spouse or intimate partner of that person; or

**(B)** causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person described in clause (i), (ii), or (iii) of subparagraph (A)

. . .

shall be punished as provided in section 2261(b) of this title.

Petitioner did not file a petition for a writ of certiorari. His section 2255 motion was filed on May 16, 2016; the Government concedes it was filed timely.[2] (Motion at 1; Response at 13 n.3.)

## II. DISCUSSION

### A. Legal Standards

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

A section 2255 petitioner must establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). "[A] habeas petitioner is not automatically entitled to a hearing and normally should not receive one if his allegations are 'vague, conclusory, or palpably incredible.'" *David,* 134 F.3d at 478 (quoting *Machibroda v. United States,* 368 U.S. 487, 495 (1962)). The First Circuit has held that a Petitioner who "fails to reasonably substantiate his ineffective assistance of counsel claim with any material issues of fact . . . has not 'overcome the presumption of regularity which the record . . . imports . . . .'" *United States v. Butt*, 731 F.2d 75, 80

---

[2] *See* 28 U.S.C. 2255(f) (providing in pertinent part that "[a] 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of − (1) the date on which the judgment of conviction becomes final.")

(1st Cir. 1984) (quoting *Walker v. Johnston*, 312 U.S. 275, 286 (1941)). "[I]ssues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion." *Singleton v. United States*, 26 F.3d 233, 240 (1st Cir. 1994) (quotation marks omitted). When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

When a petitioner raises "claims for the first time on habeas, he must show both 'cause' that excuses the procedural default and 'actual prejudice' resulting from the alleged error." *Wilder v. United States*, 806 F.3d 653, 658 (1st Cir. 2015) (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)). "One way to meet the cause requirement is to show constitutionally ineffective assistance of counsel under *Strickland v. Washington*," 466 U.S. 668 (1984). *Strickland* requires a petitioner to demonstrate that "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 688, 694. A court need not "address both components of the inquiry if the defendant makes an insufficient showing on one . . . ." *Id.* at 697.

### B. Claims and Analysis

#### 1. Claims regarding the timing of the trial, abandonment, and failure to call defense witnesses (Grounds One, Three, and Four)

Petitioner argues the Court abused its discretion with respect to the timing of the trial. (Motion at 13.) In a related claim, Petitioner argues that counsel's performance was deficient, and Petitioner was prejudiced, due to counsel's failure to move to continue the trial in order to present a complete defense. (Motion at 4, 12-13.) Petitioner also alleges that counsel omitted favorable testimony from two witnesses. (*Id.* at 20-22.) More specifically, Petitioner asserts that if called as witnesses, a psychologist would have testified that Petitioner expressed an intent merely to take photographs related to his divorce, and a friend would have testified that he had invited Petitioner to go hunting in Colorado. Petitioner argues the testimony would have introduced reasonable doubt as to Petitioner's intent. (*Id.* at 20-21.) Petitioner also contends that counsel abandoned him at a critical stage of the proceedings in order to attend to a matter of personal business. (*Id.* at 6, 17.)

Petitioner's claim that the Court abused its discretion regarding the scheduling of the trial is precluded, because the First Circuit decided the issue. *Lee* 790 F.3d at 17-18; *see Singleton*, 26 F.3d at 240. "Well before trial," the presiding judge designated the date on which the trial would conclude. *Lee* 790 F.3d at 17. Although defense counsel expressed some concern at one point about trial timing, on the court day before the day designated as the trial's final day, counsel said: "We are in very good shape. No further

witnesses." *Id.* The parties rested.[3] The First Circuit noted: "On appeal, [Petitioner] does not identify any evidence he was prevented from offering or any prejudice to him." *Id.* at 18. The First Circuit concluded that Petitioner had not demonstrated that "the Court exhibited an unreasonable and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." *Id.* (quotation marks omitted). Given the First Circuit's determination, Petitioner cannot prevail on his claim based on the timing of the trial.

Petitioner's related section 2255 ineffective assistance claims fail because the allegations are unsupported by the record. *See David*, 134 F.3d at 478. As the First Circuit noted, Petitioner's prior statements contradict the testimony Petitioner alleges the psychologist and the friend would have given: "[T]he pro se brief adds, he traveled to Maine only to take photos for use in the divorce, so he lacked the criminal intent required by statute. That, of course, is not what he said earlier, when he said that 'he was going to kill [his estranged wife's partner,] and if [his estranged wife] didn't come home, he would kill her too.'" *Lee*, 790 F.3d at 18. Under the circumstances, the fact that counsel did not call the psychologist as a witness at trial cannot reasonably constitute substandard performance by counsel.

Petitioner's claim of abandonment is also unsupported by the record. In fact, on the day Petitioner maintains counsel abandoned the case, the record reflects that counsel was present in during the court proceedings, including during a chambers conference that

---

[3] The last scheduled trial day was Monday, September 16, 2013; the parties rested on Friday, September 13, 2013. *Lee* 790 F.3d at 17.

concluded the proceedings for the day. (Trial Tr. IV at 139-66.) Petitioner thus has failed to demonstrate either substandard performance of counsel or prejudice. (Motion at 12-13.)

### 2. Claim of failure adequately to advise Petitioner on the right to testify (Ground Two)

Petitioner argues that counsel provided substandard advice when counsel advised him not to testify. (Motion at 5, 16-17.) Petitioner described counsel's actions as "coercive" and "incomplete." (*Id.* at 16-17.) Petitioner alleges that, as a result of counsel's ineffective assistance, he did not testify that he lacked criminal intent. (*Id.* at 15.) The record lacks any support for Petitioner's claim.

At trial, the Court informed Petitioner of his right to testify or not to testify:

> Mr. Lee, you have a constitutional right to testify. If you decide to testify, you'll take the stand and you'll be put under oath and your lawyer will ask you questions and then the Government attorney . . . will be entitled to cross-examine you on all matters that are within the scope of your examination and you will not be able to claim your 5th Amendment right not to incriminate yourself.

> You also have a constitutional right not to testify. If you decide not to testify, I will instruct the jury that they should draw no inference or suggestion of guilt from the fact that you chose not to testify.

> Now, you should consult with your lawyer about this to make a decision, but at the end of the day, it's your decision, not his. You should listen carefully to his advice, but you have to make the decision.

> I'm going to ask you two questions. I'm going to ask you have you discussed this matter with your lawyer – don't tell me what he said, just when I – I want you to hear the two questions first and if you tell me you have, then I'm going to ask you what your decision is.

> So first of all, have you discussed it with your lawyer?

> THE DEFENDANT: Yes, sir.

> THE COURT:  And what is your decision, to testify or not to testify?
>
> THE DEFENDANT:  Not to.

(Trial Tr. IV at 118-19.)

Petitioner has asserted no facts to support his claim of coercion by counsel.  He thus has failed to overcome the presumption that the Court may rely on his statement, made in open court, that he alone made the decision not to testify.  *See Butt*, 731 F.2d at 80.

Furthermore, even if counsel strongly advised Petitioner not to testify, such advice would have been "well within the range of professionally reasonable judgments," as the testimony may have exposed Petitioner to the risk of damaging cross-examination.  *See Strickland*, 466 U.S. at 699; *Siciliano v. Vose*, 834 F.2d 29, 31 (1st Cir. 1987) (holding that "the strong urging of counsel" not to testify does not in itself demonstrate that a defendant's "constitutional right to testify was violated").  Finally, because Petitioner's decision not to testify likely reduced his exposure to impeachment, and because the Court informed Petitioner of his right to testify, Petitioner has not demonstrated prejudice.

In short, Petitioner has not demonstrated deficient performance by counsel or prejudice.  Accordingly, Petitioner's ineffective assistance of counsel claim based on counsel's advice regarding Petitioner's right to testify fails.

### 3. Claim of failure to move to suppress evidence[4]

#### a. Fifth Amendment issue

Petitioner argues that counsel was ineffective because counsel failed to file a motion to suppress Petitioner's statements to the Maine State Police after Petitioner was stopped while driving near his estranged wife's home. (Motion at 19.) Petitioner contends the statements should have been suppressed because he had not received *Miranda* warnings before he made the statements.[5] (*Id.*)

The Government argues that counsel's performance was not deficient because Petitioner was not in custody until after he made the statements, and because Petitioner made the statements voluntarily; furthermore, the Government argues, the statements may have been useful to the defense as evidence of Petitioner's non-criminal intent. (Response at 22-23.) The Government also argues that Petitioner has failed to demonstrate prejudice, because there is no reasonable probability that the suppression of Petitioner's statements would have resulted in a different outcome. (*Id.* at 23.)

At trial, a sergeant with the Maine State Police testified that he was on duty and responded to the estranged wife's emergency call that she believed Petitioner was stalking her in a white Cadillac with out-of-state license plates. (Trial Tr. III, ECF No. 147 at 123-24.) After locating the vehicle, the officer activated his emergency lights, and Petitioner stopped the vehicle. (*Id.* at 125.) The officer testified that he asked Petitioner

---

[4] The remaining claims do not appear as numbered grounds on the form section 2255 motion, but they are included as additional grounds in the pages attached to the form motion.

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

to step out of the vehicle, he did a pat-down of Petitioner, and he asked Petitioner to empty his pockets. The officer further testified that after he determined that Petitioner did not have weapons on his person, he "started to have a conversation" with Petitioner. (*Id.* at 126.)

The officer asked Petitioner whether there were any weapons in the car, and Petitioner asked why the officer had stopped him. (*Id.* at 127.) The officer told Petitioner that "there was a complaint about his vehicle and that he might be armed." (*Id.*) After the officer repeated the question a couple of times, Petitioner told him there were four weapons in the car. (*Id.* at 128.) The officer testified that "[a]t a certain point," he asked Petitioner whether he had any loaded firearms in the car. (*Id.*) The officer testified: "I got an equivocal response, an unclear response as to whether or not the gun was loaded." (*Id.*)

The officer testified that he was alone with Petitioner for less than ten minutes, and that after other officers arrived, they recorded the conversation with Petitioner on audio and camera. (*Id.* at 130-31.) The officer testified that before the other officers arrived, he asked Petitioner why he was in the town where he was stopped, and Petitioner provided the officer with "[s]everal different versions" in response. (*Id.*) The explanations included that Petitioner came to visit friends in New England; that he came to hunt elk; and that he came to see his daughter. (*Id.* at 131.) At one point, Petitioner told the officer that his estranged wife did not know he was coming to Maine, and at another point he said she was aware. (*Id.* at 131-32.)

A person who is detained temporarily pursuant to a traffic stop is not in custody for purposes of the *Miranda* warnings, which apply only to custodial interrogations.

*United States v. Campbell*, 741 F.3d 251, 265-66 (1st Cir. 2013) ("Traffic stops are 'comparatively nonthreatening,' and therefore do not require *Miranda* warnings to counter the threat of coercion) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)).[6] "[T]he officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." *Berkemer*, 468 U.S. at 439. If the stop involves a greater intrusion, it "may evolve into a de facto arrest, and if it does, the suspect is entitled under the Fifth Amendment to *Miranda* warnings before being interrogated." *United States v. Rabbia*, 699 F.3d 85, 91 (1st Cir. 2012). "There is no bright line that distinguishes a valid *Terry* stop from a de facto arrest." *Id.* The Court looks at the "'totality of the circumstances,'" including "the location and duration of the stop, the number of police officers present at the scene, the degree of physical restraint placed upon the suspect, and the information conveyed to the suspect." *Id.* (quoting *United States v. Chaney*, 647 F.3d 401, 409 (1st Cir. 2011)).

Upon review of the totality of the circumstances, a reasonable practitioner would conclude that Petitioner was not in custody when he made his statements to the police. The officer had a reasonable basis for an investigatory stop, and the officer's questions were limited and reasonable given the reason for the stop. The stop was relatively brief and did not involve a restraint of Petitioner, other than was reasonably necessary to ensure the officer's safety (i.e., for the pat-down of Petitioner).

---

[6] "[A] police officer is permitted to make a brief investigatory stop, commonly known as a *Terry* stop, based on a reasonable suspicion that criminal activity may be afoot." *United States v. Rabbia*, 699 F.3d 85, 89 (1st Cir. 2012). *See Terry v. Ohio*, 392 U.S. 1 (1968).

Furthermore, counsel reasonably could have decided to use Petitioner's statements to police during the stop to offer an explanation, given at the time of the stop, for Petitioner's presence near his estranged wife's home.[7]  That is, counsel's use of the statements in an attempt to refute the Government's contention that Petitioner was stalking his estranged wife, without subjecting Petitioner to cross-examination, would be a reasonable strategic decision, and thus would not fall "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

Finally, Petitioner has failed to demonstrate prejudice, because even if counsel had filed a successful motion to suppress, the other evidence of guilt was "so overwhelming" that Petitioner would have been convicted.  *United States v. Coker*, 433 F.3d 39, 47 (1st Cir. 2005).  The First Circuit concluded that "[i]t is abundantly clear from the record that a rational jury could find the defendant guilty."  *Lee*, 790 F.3d at 18.  There is ample evidence to support the conviction, including, as the First Circuit noted, Petitioner's prior statement that "'he was going to kill [his estranged wife's partner,] and if [his estranged wife] didn't come home, he would kill her too.'"  *Id.*

In sum, Petitioner has failed to demonstrate either deficient performance or prejudice with respect to counsel's failure to file a motion to suppress Petitioner's statements.

---

[7] Counsel in fact moved for the admission of Petitioner's recorded statements.  A transcript of one of two recordings taken during the traffic stop was admitted without objection.  (Trial Tr. IV, ECF No. 148 at 120-21, 139-40.)  Counsel moved for the admission of the entire transcript of the other recording. (*Id.* at 123.)  The Government objected to the admission of some of the statements.  (*Id.* at 125-26.) The Court admitted portions of the transcript under Rule 803(3), which excepts statements of intent or plan from exclusion under the hearsay rule.  (Trial Tr. V, ECF No. 149 at 12-13.)

### b. Fourth Amendment issue

Petitioner also argues that counsel should have moved to suppress the tangible evidence obtained as the result of the stop of Petitioner's vehicle.  (Motion at 19.)  The following was seized from the car: two handguns, two rifles, one shotgun, a roll of duct tape, new rope, rubber gloves, plastic bags, handcuffs, a map of Maine, and an open sleeping bag.  (Trial Tr. III at 142-43.)

The Government argues that counsel's performance was not deficient, because the warrantless search of the car Petitioner was driving when he was stopped was legal, and therefore, a motion to suppress would have been futile.  (Response at 23.)  Specifically, the Government contends Petitioner's failure to provide a plausible explanation for his presence outside his estranged wife's house, after she had reported that he was stalking her, justified the warrantless search of the vehicle Petitioner was driving.  (*Id.* at 23.)

A motion to suppress the evidence obtained from the car would have been futile, as the warrantless search and seizure took place after the arrest, and it was valid under either the search-incident-to-arrest exception, or the inventory-search exception, to the warrant requirement.  *See United States v. Acosta-Colón*, 741 F.3d 179, 206 (1st Cir. 2013).  (Trial Tr. III at 135-36.)

The search-incident-to-arrest exception "permits a warrantless search if 'it is reasonable to believe' that the car has 'evidence of the offense of arrest.'"  *Id.* (quoting *Arizona v. Gant*, 556 U.S. 332, 351 (2009)).  In response to the officer's question about weapons, Petitioner told the officer there were weapons in the car.  (Trial Tr. III at 127-28.)  A reasonable officer would conclude that the vehicle contained evidence of the stalking

crime for which Petitioner was arrested; therefore, a warrantless search was permissible under the search-incident-to-arrest exception, *see Acosta-Colón*, 741 F.3d at 206.

Under the inventory-search exception, if the arrest is legal, "the police can take the car back to the barrack and search it pursuant to standard inventory procedures−provided also that they do not 'act[] in bad faith or for the sole purpose of investigation.'" *Id.* at 207 (quoting *Colorado v. Bertine*, 479 U.S. 367, 371 (1987)). Petitioner has not offered any evidence, and the record does not support any argument, that the arrest was illegal or that the search was conducted in bad faith or solely for investigation; therefore, a warrantless search of the vehicle was permissible under the inventory-search exception, *see Acosta-Colón*, 741 F.3d at 207.

Because the warrantless search was permissible under either exception to the warrant requirement, counsel's decision not to file a motion to suppress was not substandard, and Petitioner was not prejudiced by the decision.

### 4. Claim of failure adequately to argue evidentiary issues

Petitioner alleges that counsel failed adequately to argue that evidence of Petitioner's prior acts of domestic violence against his estranged wife should have been excluded due to unfair prejudice. (Motion at 23.) This issue was the subject of a motion *in limine* (ECF No. 59), which the Court denied in part as to evidence of the prior abuse. (Oral Order, ECF No. 85.) Petitioner appealed from the decision, and the First Circuit determined that the Court did not abuse its discretion. *Lee*, 790 F.3d at 16-17.

Petitioner's claim lacks merit. Counsel filed a motion *in limine* to exclude evidence of prior abuse; the fact the Court was not persuaded does not give rise to a claim of

ineffective assistance.  *See Strickland*, 466 U.S. at 699.  Counsel's performance was not deficient, and Petitioner was not prejudiced.

### 5.  Claim of failure to advise Petitioner about sentencing exposure

Petitioner argues that counsel failed to inform him that he might be subject to a sentencing enhancement under USSG § 2A6.2, and failed to inform him that he could be sentenced to consecutive terms resulting in a total of 100 months in prison.  (Motion at 22-23.)

At the sentencing stage of the proceedings, counsel made an argument based on USSG § 2A6.2; the revised presentence investigation report reflects that Petitioner objected to the report's suggestion of a four-level enhancement under section 2A6.2.  Petitioner conceded a two-level enhancement for possession of a firearm, but he argued against a finding of a pattern of activity.  Counsel made the same argument in Petitioner's sentencing memorandum.  (Sentencing Memorandum, ECF No. 121 at 7-8.)

The revised presentence investigation report discussed USSG § 5G1.2(d), which provides for consecutive sentences when, as here, there are multiple counts of conviction, and "the sentence imposed on the count carrying the  highest statutory maximum is less than the total punishment."

At sentencing, in response to the Court's inquiry, counsel represented that he had discussed the revised presentence investigation report with Petitioner.  (Sentencing Tr., ECF No. 151 at 4.)  When the Court asked whether it was Petitioner's understanding that the only dispute under the sentencing guidelines was whether Petitioner had engaged in a

pattern of activity, Petitioner responded by saying: "Yes. That's what the attorney has told me." (*Id.* at 7.)

"Normally, the plea and sentencing proceeding records interpose 'a formidable barrier in any subsequent collateral proceeding[s],' and the statements of the defendant and his lawyer at such a hearing are presumed to be true." *Digiorgi Alegre v. United States*, 974 F.2d 1329 (1st Cir. 1992) (per curiam) (unpublished) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Petitioner's section 2255 allegation that counsel failed to discuss the sentencing guidelines lacks credibility given his statements at sentencing. Petitioner points to no evidence that would refute the presumption that his statements at sentencing were true. Petitioner, therefore, has failed to demonstrate that counsel's performance was deficient, or that Petitioner was prejudiced.

### 6. Claim of cumulative error

Petitioner argues that if the Court does not find any of his individual claims persuasive, the Court should nevertheless grant relief because the cumulative effect of alleged errors rendered his conviction and sentence fundamentally unfair. (Motion at 23-24.)

"'*Strickland* clearly allows the court to consider the cumulative effect of counsel's errors in determining whether a defendant was prejudiced.'" *Dugas v. Coplan*, 428 F.3d 317, 335 (1st Cir. 2005) (quoting *Kubat v. Thieret*, 867 F.2d 351, 370 (7th Cir. 1989) (citing *Strickland*, 466 U.S. at 694)). In this case, however, because Petitioner's claim does not allege any specific facts independent of those alleged in his

other claims, and because, as explained above, the other claims lack merit, there is no basis

for Petitioner's claim that he was prejudiced by a cumulative effect of errors. *See id.*

## III.   CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule

8 of the Rules Governing Section 2255 Cases.  In addition, I recommend that the Court

deny Petitioner's motion for habeas relief under 28 U.S.C. § 2255.  I further recommend

that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing

Section 2255 Cases because there is no substantial showing of the denial of a constitutional

right within the meaning of 28 U.S.C. § 2253(c)(2).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

<u>/s/ John C. Nivison</u>
U.S. Magistrate Judge

Dated this 20th day of April, 2017.